IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BRENDA ADAMS,

    Plaintiff,

v.                                                              CASE NO. 1:13-cv-235-MW-GRJ

ROBERT A. MCDONALD,[1]

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court upon Defendant's Motion for Summary Judgment. Doc. 63. Plaintiff has responded to the motion, Doc. 69, and Defendant has replied. Doc. 70. The motion is therefore ripe for review. For the reasons discussed below, the Defendant's Motion for Summary Judgment is due to be granted.

### I. BACKGROUND

Plaintiff initiated suit for alleged race-based discrimination by the United States Department of Veterans Affairs (Defendant). Doc. 29 at 3–4. In her Second Amended Complaint,[2] Plaintiff alleges a number of instances of discriminatory activity based on

---

[1] The Department of Veterans Affairs was the original named defendant in this case. However, pursuant to 42 U.S.C. § 2000e-16(c), the head of the Department of Veterans Affairs, Robert A. McDonald, is the proper defendant. The **Clerk** is instructed to change the name on the docket to reflect the proper defendant.

[2] Plaintiff initiated this suit and filed her Second Amended Complaint *pro se*. However, Plaintiff is now represented by counsel. Doc. 51. To err on the side of caution, this Court holds Plaintiff's pro se filings "to a less stringent standard" than those drafted by attorneys and liberally construes her arguments. *See Badger v. MCG Health, Inc.*, 546 Fed. Appx. 833, 834–35 (11th Cir. 2013).

her identity as an African-American. *Id.* at 9–11. Plaintiff claims that Defendant's actions constitute (1) disparate treatment and (2) a hostile work environment. *See* Doc. 69 at 3–4.

Plaintiff is an African-American and thus qualifies as a member of a protected class under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2. Plaintiff is a Registered Nurse and was employed by the Malcom Randall Veterans' Affairs Medical Center (VA) in Gainesville, Florida from July 2007 to October 2011 as a Case Manager. Doc. 29 at 9. Plaintiff was also an Air Force Nurse Reservist until 2009. *Id.* Plaintiff alleges that during her time at the VA, she was subjected to discrimination by her direct supervisor, Robin Riffee, and Ms. Riffee's successor, Joan MacLeod. *Id.* at 3.

Plaintiff's factual allegations can be categorized as alleging the following employment actions: (1) receiving written counseling regarding her performance and job duties; (2) receiving verbal and other informal forms of feedback regarding her performance and absences; (3) being denied leave on various occasions and required to fill out proof of absences; (4) having her government cell phone taken away; (5) being sent to communication training; (6) receiving compensation time instead of being paid overtime; and (7) being subjected to condescending attitude and stares by her supervisors. Doc. 29 at 9–11; Doc. 69 at 5. Plaintiff alleges that she was subjected to this treatment on the basis of her race and white employees did not receive the same treatment. Doc. 69 at 4–5. Plaintiff has exhausted her administrative remedies with the agency and with the EEOC. *See* Doc. 29 at 12–25.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc*. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added)[3].

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

---

[3]Although unpublished opinions are not binding on this Court, they are persuasive authority.  11th Cir. R. 36-2.

> The Eleventh Circuit has noted that
>
> > [i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a genuine issue of material fact regarding each element of his claim. As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth., 3*01 F. App'x 881, 885 (11th Cir. 2008). Where the nonmoving party bears the burden of proof, he must offer more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

### III. DISCUSSION

### A. Disparate Treatment

Plaintiff claims that she was subjected to disparate treatment during her employment at the VA and lists various instances that allegedly demonstrate racial discrimination. Doc. 29 at 9; Doc. 69 at 5–4.  Although Plaintiff's

articulation and organization of these allegations are less than clear,[4] these allegations can be organized into the following general categories: (1) receiving written counseling regarding her performance and job duties; (2) receiving verbal and other informal forms of feedback regarding her performance and absences; (3) being denied leave on various occasions and required to fill out proof of absences; (4) having her government cell phone taken away; (5) being sent to communication training; and (6) receiving compensation time instead of being paid overtime. Plaintiff claims that these actions occurred "based on her race" and white co-workers did not experience similar actions against them. Doc. 29 at 9; Doc. 69 at 4.

Defendant argues that the employment actions complained of do not constitute adverse employment actions because they did not alter the terms conditions or privileges of her employment and, as such, Plaintiff fails to state a *prima facie* case of discrimination. Doc. 63 at 13. Further, Defendant argues that Plaintiff failed to show that the employment actions were motivated by racial animus and that Plaintiff is unable to rebut Defendant's proffered reasons explaining the employment actions. *Id.* at 12. After careful consideration, the

---

[4] Plaintiff's Second Amended Complaint only lists the written counseling citations as being the basis for the disparate treatment claim and categorizes the rest of the employment events under the hostile environment component of her Complaint. In her Response and without much apparent organization, Plaintiff raises these allegations as being relevant to the disparate treatment claim and the hostile work environment but leaves out other alleged events. To err on the side of caution and construing her *pro se* complaint liberally, the Court has considered all events contained in the Plaintiff's Second Amended Complaint and Response to the Motion for Summary Judgment as being relevant to the claims at issue.

Court agrees with Defendant that Plaintiff has failed to state a *prima facie* case of employment discrimination and that even if Plaintiff has done so she had failed to rebut Defendant's proffered reasons for its actions.

"Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Direct evidence refers to evidence that, if believed, "establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* at 1286. Direct evidence therefore is limited to actions or statements of an employer reflecting a discriminatory attitude relating to the discrimination complained of by the employee. *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007). In fact, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate . . . will constitute direct evidence of discrimination." *Id.* (internal quotation marks omitted). In the absence of direct evidence, a plaintiff must prove discrimination through the use of circumstantial evidence. *Joe's Stone Crab, Inc.*, 220 F.3d at 1286.

The *McDonnell Douglas* standard applies to circumstantial evidence claims. *Id.* "To establish a prima facie case of disparate treatment under this rubric, a plaintiff 'must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated [white] employees more favorably; and (4) she was qualified to do the job.'" *Id.* (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

The second factor—adverse employment action—requires the plaintiff to show a "serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The Eleventh Circuit recognizes that Title VII is "neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Further, the Eleventh Circuit recognizes that "criticisms of an employee's performance, whether written or oral, which do not lead to tangible job consequences, are generally not sufficient to constitute a violation of Title VII." *Jones v. Spherion Atl. Enter., LLC*, 493 Fed. Appx. 6, 9 (11th Cir. 2012); *accord Davis*, 245 F.3d at 1242 ("Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely—without more—establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause."). Similarly, interference with or cancellation of a plaintiff's planned vacation day does not rise to the level of an adverse employment action. *Jackson v. Hall Cnty. Gov't*, 518 Fed. Appx. 771, 773 (11th Cir. 2013).

If the plaintiff is successful in establishing its *prima facie* claim by the

preponderance of the evidence, the defendant will then bear the burden of showing legitimate and non-discriminatory reasons for the adverse employment action. *Id.* At this stage, the defendant's burden is "exceedingly light" as the defendant need not prove anything; it must only articulate a reason with sufficient specificity in the evidence to allow the plaintiff to rebut it. *Mathis v. Wachovia*, 509 F. Supp. 2d 1125, 1139 (N.D. Fla. 2007); *see also Combs v. Plantation Patters*, 106 F.3d 1519, 1528 (11th Cir. 1997) ("To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."). If the defendant successfully produces such a reason, the plaintiff "then has the ultimate burden of proving the reason to be a pretext for the unlawful discrimination." *Joe's Stone Crab, Inc.*, 220 F.3d at 1286.  To show that the defendant's proffered reasons are pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538. If a reasonable jury could conclude that the employer's proffered reasons were indeed not the reasons behind the employment action, judgment as a matter of law is inappropriate. *Id.* However, conclusory allegations that contradict the defendant's proffered reasons do not serve to create a genuine issue of material fact, so as to render summary judgment improper. *Jackson*, 518 Fed. Appx. at 773.

In the present case, Plaintiff does not allege any instance that would constitute direct evidence of discrimination. In fact, Plaintiff affirmatively admits that she was never subjected to derogatory or racially charged comments by anyone at the VA. Doc. 63, Ex. A at 22. Consequently, the *McDonnell Douglas* framework for evaluating this claim is controlling. *See Joe's Stone Crab, Inc.*, 220 F.3d at 1286.

Plaintiff fails to establish a *prima facie* claim of disparate treatment by a preponderance of the evidence because all but one of the employment actions complained of are relatively trivial and do not constitute or cause a "serious and material change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239. The remaining claim that may be considered an adverse employment action under Title VII was not proven by a preponderance of the evidence. Between her Second Amended Complaint and her Response to Defendant's Motion for Summary Judgment, Plaintiff enumerates a number of actions that allegedly constitute adverse employment actions. *See* Doc. 29 at 9–10; Doc. 69 at 4–7. These are (1) receiving written counseling regarding her performance and job duties; (2) receiving verbal and other informal forms of feedback regarding her performance and absences; (3) being denied leave on various occasions and required to fill out proof of absences; (4) having her government cell phone taken away; (5) being sent to communication training; and (6) receiving compensation time instead of being paid overtime. The Court

will consider each of these in turn.

It is well-established in the Eleventh Circuit that employer criticism and negative feedback that does not result in tangible employment consequences are generally not considered adverse employment actions under Title VII. The Court does not find any factors in the present case to warrant a departure from the general rule. Plaintiff does not suggest that these actions resulted in lowered compensation, demotion, suspension, or other unfavorable changes to her employment privileges or duties. In other words, Plaintiff merely alleges that she received these unwarranted written and informal criticisms. Plaintiff feared that these disciplinary actions and performance criticisms may lead to her termination, but there was never a threat of termination and this was only perceived by her. Doc. 63, Ex. A at 20. To the contrary, the record shows – and Plaintiff does not dispute – that her salary increased steadily during her time at the VA and she never lost any benefits. Doc. 63, Exs. A–B.

Plaintiff's grievances related to her denial of leave also fall short of adverse employment actions. Presumably, being denied time off from work can rise to the level of an adverse employment action in some cases. In the present case, however, the record shows that Defendant allowed Plaintiff to take leave in excess of the allowable hours for military leave. *See* Doc. 63, Ex. E. Also, Plaintiff was freely allowed leave for family care, sick leave, and annual leave. *Id.* Plaintiff does not contest these findings. Similarly, being required to submit

proofs of absence is not an adverse employment action under Title VII. Though it may be an added nuisance to have to fill out additional paperwork and provide evidentiary support for one's absences, "petty slights or minor annoyances that often take place at work" are not materially adverse employment actions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Consequently, Plaintiff's complaints regarding her leave time are not actionable as disparate treatment under Title VII.

      Additionally, Plaintiff complains that her government cellular phone was taken away based on her race. While an employer-provided cellular phone can constitute an employment benefit, cessation of such a benefit does not constitute an adverse employment action under Title VII. *See, e.g.*, *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007) ("Nor did the requirement that Michael turn in her laptop computer . . . constitute [a] materially adverse action."); *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482 (6th cir. 2006) ("Plaintiffs complain that Defendants took adverse action against them by ordering their pagers returned. Such an action is not materially adverse. Plaintiffs did not suffer any loss or diminution of wages, benefits, or responsibilities."). The primary reason why employers provide employees with cellular phones is for work-related purposes and to ensure that the employee can be reached with ease. It is, in effect, for the benefit of the employer—the personal benefit reaped by the employee is incidental and trivial. If the employee does not have a

substantial employment-related need for the phone and the employer considers the phone to be of greater benefit if in the hands of another employee—as was the case here—the now-phoneless employee is not severely and personally harmed by the employer's decision. Consequently, requiring Plaintiff to relinquish her government-issued cellular phone did not substantially alter the terms of her employment.

Moreover, the communication training imposed on Plaintiff does not constitute an adverse employment action under Title VII. Plaintiff does not elaborate regarding the consequences of being sent to communication counseling and merely alleges that she was required to undergo this training "all because of her race and color." Doc. 68 at 7. Without more, it is difficult to imagine how being subjected to an additional skills training can have a materially negative impact on one's job, duties, or benefits.

Finally, in her Second Amended Complaint, Plaintiff alleges that "[f]rom 2007 to 2010, she received compensation time instead of being paid overtime." Doc. 29 at 10. Receiving less than fair compensation is indeed a materially adverse employment action that would, if proven, clearly set forth a *prima facie* claim of disparate treatment. However, this allegation is merely a bare allegation with no support in the record. In fact, Plaintiff's only mention of this allegation is contained in the Second Amended Complaint and is not supported by any piece of evidence. Consequently, Plaintiff fails to establish this allegation by a

preponderance of the evidence. *See Davis*, 510 F. Supp. 2d at 682.

Even assuming, *arguendo*, that these claims all constitute adverse employment actions and Plaintiff has proven them by a preponderance of the evidence, Defendant has successfully rebutted the presumption of discrimination by offering legitimate and non-discriminatory reasons for the employment actions. Furthermore, Plaintiff has not shown that these proffered reasons are pretextual. As such, Plaintiff's claim must fail under the *McDonnell Douglas* standard.

Regarding the criticisms and actions relating to Plaintiff's performance and absences, Defendant makes apparent that these actions were undertaken because of flaws in Plaintiff's performance and Plaintiff's abuse of the leave system, respectively. See Doc. 63 at 18–21. Regarding Plaintiff's difficulty obtaining time off, Defendant's evidence demonstrates that its denials of some of her requests were for legitimate reasons, such as Plaintiff providing short notice for holiday vacation knowing that many employees also seek vacation during that time, and complications with staffing. *Id.*

Regarding the cellular phone, Defendant has submitted evidence demonstrating that Plaintiff's phone was taken and given to another employee—an African-American employee, incidentally—because the other employee had to commute between the Gainesville VA and the Lake City VA on a regular basis and Plaintiff already had a desk, phone, and computer at work.

*Id.* at 19.

Regarding the lack of overtime payments, the evidence demonstrates that Plaintiff never made a request for overtime or compensation time. *Id.* at 8.

In her Response, Plaintiff does not attempt to rebut the reasons proffered by Defendant. *See* Doc. 69. Rather, Plaintiff merely recites some of the allegations in the Second Amended Complaint and elaborates on the facts surrounding those allegations. In reciting the allegations, Plaintiff argues—in a somewhat conclusory fashion—that her white counterparts did not experience the same treatment. Doc. 69 at 4–5. To support these propositions, the Plaintiff points to her deposition, which in turn says essentially the same thing. While Plaintiff said at her deposition that there were white registered nurses who were not treated in a manner similar to Plaintiff, these self-serving statements are devoid of any factual support in the record fall and therefore fall short of demonstrating the existence of comparators for purposes of determining illegal discrimination. *See Brooks v. CSX Transp., Inc.*, 555 Fed. Appx. 878, 883 (11th Cir. 2014) ("To prevent courts from second guessing employers' reasonable employment decisions, we require that the quantity and quality of the comparator's misconduct be 'nearly identical' to the plaintiff's."). In other words, Plaintiff has completely ignored the *McDonnell Douglas* framework in her response.[5] Consequently, the Court concludes that even if Plaintiff had made a

---

[5] Nor is there a claim that direct evidence of discrimination exists, so as to take this case out of the *McDonnell Douglas* framework.

*prima facie* showing of disparate treatment by a preponderance of the evidence, Plaintiff has failed to rebut Defendant's legitimate proffered reasons for its actions

**B. Hostile Work Environment**

In her Second Amended Complaint, Plaintiff places the majority of her allegations under two numbered paragraphs, both of which allege that the enumerated allegations show that "she was subjected to hostile work environment harassment based on her race." Doc. 29 at 9–10. All of these alleged incidents include those discussed above, i.e., (1) receiving written counseling regarding her performance and job duties; (2) receiving verbal and other informal forms of feedback regarding her performance and absences; (3) being denied leave on various occasions and required to fill out proof of absences; (4) having her government cell phone taken away; (5) being sent to communication training; and (6) receiving compensation time instead of being paid overtime. In her Response, Plaintiff attempts to bolster the discriminatory work environment claim by pointing to the condescending tone and stares she was allegedly subjected to by her immediate supervisor. Doc. 69 at 5.  After careful consideration, the Court concludes that none of this alleged conduct justifies a finding of a racially hostile work environment at the VA.

"[W]hen the workplace is permeated with [racially] discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (alterations in original) (quoting *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). To demonstrate a hostile work environment in violation of Title VII, a plaintiff must show that

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Id.* When determining whether a work environment is sufficiently hostile, a court should consider the frequency of the discriminatory conduct; the severity of the conduct; whether the conduct is physically threatening, humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001). Additionally, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In sum, the plaintiff must show that his or her "work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013).

In the present case, Plaintiff's allegations of negative experiences in the work place are not actionable as creating a hostile work environment unless they constitute harassment based on her African-American identity. *See Jones*, 683 F.3d at 1292.  Plaintiff does not explain how these allegations amount to harassment, and much less, how these actions are linked to her racial identity. When viewed from the perspective of the reasonable person, none of Plaintiff's allegations rise to the level of harassment based on race.

Plaintiff concedes that her supervisors never made racial slurs or used derogatory words during her time at the VA. Doc. 63, Ex. 4 at 15–16. Further, the record is devoid of any allegation that objectively could link the negative work actions with her status as an African-American. Plaintiff argues that her supervisors' stares, tone, and condescending attitude caused her to know "in [her] heart of hearts that it was based on race." *Id.* at 12–13. This allegation, coupled with the aforementioned actions, falls substantially short of establishing that Defendant's actions were racially motivated or otherwise based on race.

Moreover, Defendant adequately explains the actions that Plaintiff complained of and has shown that those actions were instituted for legitimate reasons. As stated above, Plaintiff does not attempt to contradict these reasons in her filings.

Finally, the record shows no evidence suggesting the severity or pervasiveness of the actions taken against Plaintiff. Thus, there is no question

that Plaintiff has failed to establish a hostile work environment under Title VII.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment, Doc. 63, should be **GRANTED**, and judgment should be entered in Defendant's favor.

**IN CHAMBERS** this 20th day of October 2014.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**